**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 21-1220, 21-1221, 21-1225, 21-1236, 21-1237 & 21-1258**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

LUCAS WALL, LEONARDO McDONNELL, MICHAEL SEKLECKI (on behalf of himself and his minor child M.S.), MICHAEL FARIS, CHARITY ANDERSON, ANGELA BYRD, MICHAEL CLARK, URI MARCUS, LARRY JAMES BONIN JR., ANTHONY EADES, KLEANTHIS ANDREADAKIS, THERESA MULLINS and AARON ABADI,

Petitioners,

v.

TRANSPORTATION SECURITY ADMINISTRATION,

Respondent.

---

Petition for Review of TSA Security Directives 1542-21-01, 1544-21-02, 1582/84-21-02 and Emergency Amendment 1546-21-01

---

## SUPPLEMENTAL BRIEF FOR RESPONDENT

---

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

DANIEL TENNY
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Petitioners, who are all proceeding *pro se*, are Lucas Wall, Leonardo McDonnell, Michael Seklecki (on behalf of himself and his minor child M.S.), Michael Faris, Charity Anderson, Angela Byrd, Michael Clark, Anthony Eades, Uri Marcus, Larry James Bonin Jr., Kleanthis Andreadakis, Theresa Mullins, and Aaron Abadi.

Respondent is the Transportation Security Administration.

Amicus briefs have been lodged by a group of 309 pilots and flight attendants, all proceeding *pro se*; Darren Aquino, separately proceeding *pro se*; Tyson D. Gabriel, David M. Howard, and Stephen E. Petty, separately proceeding *pro se*; and Leia Montgomery and Kristen Meghan Kelly.

### B.    Rulings Under Review

These consolidated petitions for review challenge three security directives and one emergency amendment first issued by the Transportation Security Administration on February 1, 2021:  Security

Directive 1542-21-01, Security Directive 1544-21-02, Security Directive 1582/84-21-01, and Emergency Amendment 1546-21-01. These directives were initially set to expire on May 11, 2021, but were subsequently renewed four times without substantive change. These petitions for review were filed after the second extension of the challenged directives issued on August 20, 2021.

## C. Related Cases

These six consolidated petitions for review all originated in other courts of appeals and were transferred to this Court pursuant to 28 U.S.C. § 2112(a)(5) because they challenge the same Security Directives and Emergency Amendment at issue in *Corbett v. Transportation Sec. Admin.*, 19 F.4th 478 (D.C. Cir. 2021), *cert. pending* No. 22-33 (S. Ct.). Undersigned counsel is not aware of any other related cases pending in this Circuit. Challenges to the legality of the Security Directives and Emergency Amendment at issue in this case have been raised in several other cases pending in courts outside of this Circuit. *See, e.g.*, *Family Research Council Action, Inc. v. Biden*, No. 4:22-cv-209 (N.D. Tex.); *Florida v. Walensky*, No. 8:22-cv-718 (M.D. Fla.).

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

ii

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

ARGUMENT ........................................................................................... 5

CONCLUSION ...................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <u>Page(s)</u>

*Alaska v. U.S. Dep't of Agric.*,
   17 F.4th 1224 (D.C. Cir. 2021)..............................................7, 12, 14, 15

*American Bankers Ass'n v. National Credit Union Admin.*,
   934 F.3d 649 (D.C. Cir. 2019) ................................................................ 6

*American Bar Ass'n v. Federal Trade Comm'n*,
   636 F.3d 641 (D.C. Cir. 2011) .............................................................. 15

*Clarke v. United States*,
   915 F.2d 699 (D.C. Cir. 1990) .......................................3, 6, 7, 9, 14, 15

*Corbett v. TSA*,
   19 F.4th 478 (D.C. Cir. 2021),
   *cert. pending* No. 22-33 (S. Ct.)........................................1, 6, 8, 10, 15

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979)................................................................................ 15

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009) .............................................................. 15

*Honig v. Doe*,
   484 U.S. 305 (1988)................................................................................ 6

*National Black Police Ass'n v. District of Columbia*,
   108 F.3d 346 (D.C. Cir. 1997) ...........................................................6, 15

*National Wildlife Fed'n v. Hodel*,
   839 F.2d 694 (D.C. Cir. 1988) .............................................................. 12

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020)................................................................................ 7

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   137 S. Ct. 2012 (2017)............................................................................ 7

**Statutes:**

49 U.S.C. § 114(g) ........................................................ 9

49 U.S.C. § 114(*l*)(2) ...............................................8, 9

49 U.S.C. § 44901 (note) ............................................. 9

**Other Authorities:**

86 Fed. Reg. 8217 (Feb. 4, 2021) ................................. 8

Order Granting Summary Judgment,
  *Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-cv-1693,
  2022 WL 1134138 (M.D. Fla. Apr. 18, 2022),
  *appeal pending* No. 22-11287 (11th Cir.) .............................. 2

Press Release, TSA, *Statement Regarding Face Mask Use on Public
  Transportation* (Apr. 18, 2022), https://go.usa.gov/xuSpN ................ 15

# GLOSSARY

TSA        Transportation Security Administration

CDC        Centers for Disease Control and Prevention

## INTRODUCTION AND SUMMARY OF ARGUMENT

These consolidated petitions for review challenge four now-expired directives first issued by the Transportation Security Administration (TSA) on January 31, 2021. Those directives were designed in part to aid in implementing and enforcing a related order issued by the Centers for Disease Control and Prevention (CDC) that required the wearing of masks on public transportation in order to mitigate the threat to transportation security posed by the ongoing COVID-19 pandemic. *See generally Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021).

As initially issued, TSA's directives were scheduled to expire on May 11, 2021. However, TSA determined in consultation with the CDC and other government agencies that it was necessary to extend the expiration of directives several times in order to continue to protect against the threat COVID-19 posed to transportation safety and security. *See, e.g.*, Security Directive 1542-21-01A (extending the directive through September 13, 2021); Security Directive 1542-21-01B (extending the directive through January 18, 2022); Security Directive 1542-21-01C (extending the directive through March 18, 2022); Security Directive 1542-21-01D (extending the directive through April 18, 2022).

In April 2022, TSA announced that it intended to extend the expiration of the directives for an additional 15 days, through May 3, 2022, in order to monitor the continued spread of COVID-19 and determine, in consultation with the CDC and other government agencies, whether it was appropriate to change the mask requirements. On April 18, 2022, the day that the directives were scheduled to expire absent that extension, a district judge in the United States District Court for the Middle District of Florida vacated the related CDC order. Order Granting Summary Judgment, *Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022), *appeal pending* No. 22-11287 (11th Cir.). That same evening, TSA rescinded the forthcoming extension of its Mask Directives, and the challenged orders expired as scheduled at midnight that evening.

By order dated August 11, 2022, this Court requested that the parties file supplemental briefs addressing whether any portion of these petitions for review are moot in light of the expiration of the challenged directives. It is without question that the orders challenged by petitioners are no longer in effect, and thus, that a decision on the merits of the petitions for review of those orders will not "presently

affect the parties' rights." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (quotation marks omitted). Mootness thus turns on whether there is a "more-than-speculative" chance that a decision on the merits of petitioners' arguments will affect the parties' rights in the future, and if so, whether any of the doctrinal exceptions apply. *Id.* (quotation marks omitted).

As explained in the government's opening brief, there remains a live controversy regarding petitioners' various arguments that TSA's now-expired directives were *ultra vires* or were improperly issued without notice and comment. The government's appeal from the vacatur of the related CDC order in *Health Freedom*—which precipitated the rescission of the latest extension of the challenged directives—is still pending, and the pandemic is ongoing, with new variants having emerged on several occasions. The government has not forsworn its authority to impose mask directives or its desire to do so if circumstances warrant. Any future mask-related directives issued by TSA will invoke the same authorities that petitioners claim are insufficient, including the authority to proceed without notice and comment. As a result, there is a more-than-speculative chance that a

ruling on whether petitioners' arguments that the now-expired directives were *ultra vires* or were improperly issued without notice and comment would affect the parties' rights in the future. Accordingly, although these aspects of petitioners' arguments are answered on the merits by this Court's decision in *Corbett*, they are not moot.

Petitioners' remaining arguments focus on aspects of the directives whose recurrence is far more speculative. For example, petitioners raise various challenges relating to the specific content and justifications for the directives, such as the particular effects of the directives on their ability to fly or on persons with disabilities. But the causal link between petitioners' claimed harms and the now-expired directives was dubious in the first place. And the likelihood that resolution of the legal issues presented would affect petitioners' concrete interests in the future is even more speculative now because of uncertainties regarding whether the particular challenged features of the expired directives would recur in the same form in the event that new directives were issued. Because there is only a speculative chance that these alleged harms will recur in the same manner, this portion of the case is moot.

4

Even less likely to recur are petitioners' arbitrary-and-capricious challenges, which ask this Court to evaluate the particular justifications given for the directives at the time they were first adopted. But even if mask-related directives are adopted in the future, they will necessarily be predicated (at least in part) on the circumstances that gave rise to those new directives, and any argument that those directives are arbitrary and capricious will need to be evaluated by this Court on the basis of that new record. These arguments are thus clearly moot.

As to the portions of the case that are moot, none of the doctrinal exceptions apply. Accordingly, this Court should reject petitioners' arguments regarding TSA's authority and its ability to proceed without notice and comment on the merits based on this Court's prior decision in *Corbett*, and otherwise dismiss the petitions for review as moot.

## ARGUMENT

Under the mootness doctrine, federal courts are limited to deciding "actual, ongoing controversies." *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). To that end, the doctrine "requires a

federal court to refrain from deciding [a case] if events have so transpired that" rendering a decision on the merits of the case—or a portion of the case—"will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (quotation marks omitted); *American Bankers Ass'n v. National Credit Union Admin.*, 934 F.3d 649, 661 (D.C. Cir. 2019) (noting that this "same principle applies to individual claims"). But even if a case is "superficially moot," courts may review the merits if one of the exceptions to the mootness doctrine applies. *Clarke*, 915 F.2d at 703.

**A.** Petitioners' primary challenge in these consolidated cases is that the directives were *ultra vires* because, in their view—as the petitioner in *Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021), *cert. pending* No. 22-33 (S. Ct.), unsuccessfully argued—TSA lacks statutory and regulatory authority to take action to protect against the threat that COVID-19 poses to transportation safety and security. That issue is not moot because there is a "more-than-speculative chance" that this alleged legal violation will recur. *Clarke*, 915 F.2d at 701.

6

As this Court recently recognized in *Alaska v. United States Department of Agriculture*, "[n]o entity of the federal government can ever guarantee that a statute, a regulation, or an executive order[] . . . will not be reenacted or reissued." 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021). This fact alone is not generally sufficient to defeat mootness—especially where there are "structural obstacles to reimposing a challenged law" such as the need to undergo notice-and-comment rulemaking. *Id.* But "actions that can be reversed at the stroke of a pen or otherwise face minimal hurdles to re-enforcement can thwart mootness" because, in such circumstances, it is far less speculative whether the alleged legal violation will recur. *Id.* (first citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68-69 (2020) (per curiam); and then citing *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017)).

Here, TSA's authority to issue security directives does not generally require notice-and-comment rulemaking, *see, e.g.*, 49 U.S.C. § 114(*l*)(2), and indeed, the expired directives were issued and rescinded without any similar structural hurdle. Further, there is a more-than-speculative chance that TSA will invoke the same authorities

7

challenged here to issue new mask-related directives similarly unobstructed by substantial structural hurdles.

The termination of the directives came about because the CDC order that TSA sought to enforce through the directives was vacated by a district court in a ruling that is currently on appeal.  TSA has at no time forsworn its authority to issue mask-related directives or announced a change in policy that would foreclose issuance of directives in the future in appropriate circumstances, much less done so through notice-and-comment rulemaking as in *Alaska*.  To the contrary, the national emergency declared by the Acting Secretary of Homeland Security, which directed TSA to support "the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system[] . . . from COVID-19," remains in effect.  86 Fed. Reg. 8217, 8217-19 (Feb. 4, 2021); *see Corbett*, 19 F.4th at 490 (holding that the expired directives were also a valid exercise of TSA's emergency authority under 49 U.S.C. § 114(g)); *see also* Resp. Br. 39-40.

Accordingly, there is a "more-than-speculative chance" that TSA will impose future orders related to masking during the COVID-19 pandemic and that petitioners' claimed legal violation—that TSA lacks

8

authority to do so—will recur.  *Clarke*, 915 F.2d at 701.  For this reason, petitioners' arguments that the expired directives were *ultra vires* are not moot.  *See id.*[1]

Likewise, petitioners' argument regarding the need for notice and comment is not moot.  As noted above, TSA regularly issues security directives without notice and comment.  *See, e.g.*, 49 U.S.C. § 114(*l*)(2); 49 U.S.C. § 44901 (note) (describing the transfer of the then-existent functions and authorities of the Federal Aviation Administration to TSA).  It has not forsworn its authority to do so in connection with mask-related orders.  Thus, petitioners' arguments regarding TSA's authority to impose mask directives without notice and comment are not moot and should be resolved on the merits.  But as discussed in the government's brief, those arguments require little discussion.  The *ultra vires* claim is squarely foreclosed by *Corbett*.  And as discussed in the government's response brief (Br. 24) petitioners' argument regarding

---

[1]  For similar reasons, to the extent that petitioners' various constitutional arguments challenge TSA's general authority to require masking during the COVID-19 pandemic—as opposed to challenging the specific contents or enforcement of the old directives—there remains a live controversy regarding those issues.  As discussed in the government's response brief, those arguments are entirely meritless.  *See* Resp. Br. 44-46.

notice and comment is premised on the "extraordinarily narrow view" of the circumstances that constitute a threat to security that this Court rejected in *Corbett*. *Corbett*, 19 F.4th at 486.

**B.**  Petitioners' remaining arguments concern issues that do not have a more-than-speculative chance of recurring.  For example, petitioners raise a number of arguments regarding the specific scope and contents of the directives and their effects on persons with disabilities.  It is entirely speculative, however, that any future directive would have the particular features about which petitioners complain.  Even less likely to recur are petitioners' arbitrary-and-capricious arguments, which depend upon the particular circumstances in which the directives arose, and which call upon this Court to evaluate the directives in light of the stated justifications at that time. But any future directive would take account of new circumstances and thus would not present the same issues.  These arguments should therefore be dismissed as moot.

**1.**  Petitioners devote a substantial portion of their brief to arguing that they are medically incapable of wearing masks, and yet were unable to demonstrate that they qualified for an exception to the

mask requirement under the expired directives. In petitioners' view, their inability to secure exceptions effectively barred them from traveling, which they believe violates, among other things, the Air Carrier Access Act, the United States Constitution, and various international treaties. *See* Resp. Br. 46-55 (discussing the merits of these claims).

As discussed in the government's brief, even when the directives were in effect, their connection to petitioners' alleged injuries was dubious. Several petitioners were able to travel despite the directives, and many of petitioners' alleged injuries were not attributable to the expired directives but to the actions of others, such as actions taken by airlines in determining whether petitioners qualified for exemptions or by the Department of Transportation in adjudicating petitioners' discrimination claims against airlines. The likelihood that resolution of the issues presented in the petitions would have a concrete effect in the future is even more speculative; even if TSA were to impose future directives during the ongoing pandemic, the precise scope and contents of any future directive would depend upon the circumstances that gave rise to it.

11

In short, the specific "content of any future regulation is currently unknowable," and if the issues connected to the specific contents of the directives do recur in some form, they "'will be reviewable at that time' in light of a new record." *Alaska*, 17 F.4th at 1229 (quoting *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988)). Thus, the possibility that resolution of petitioners' particularized arguments in these areas will be necessary to redress any future concrete injury is too speculative to save these issues from being moot.

Even more clearly moot is petitioners' challenge to TSA's determination that the expired directives were warranted and justified at the time they were initially issued. Petitioners argue, for example, that it was arbitrary and capricious for TSA to premise its conclusions regarding the necessity of the expired directives on the factual findings made by the CDC in January 2021. But any future directives issued in relation to the ongoing pandemic would not be based on the circumstances as of January 2021 but would instead be based on an assessment of the then-current state of affairs regarding COVID-19. Relatedly, petitioners' argument that the CDC exceeded its authority in issuing its 2021 order—which was never properly before this Court, *see*

Resp. Br. 38-40—would not be relevant to any challenge to new directives.  Although TSA would likely seek CDC's guidance and expertise on scientific matters, it would have no need to rely on the existence of a formal CDC order promulgated in the same manner (even if there was one in effect at the time) rather than relying on its own independent authority that has now been upheld by this Court. Resolution of petitioners' various arbitrary-and-capricious challenges regarding the now-expired directives would thus be a quintessential advisory opinion.

    **2.**  As to the issues in the case whose resolution would not give rise to a more-than-speculative chance of having any practical effect on petitioners, none of the doctrinal exceptions to mootness apply.

    *First*, the doctrine of voluntary cessation does not apply here. That exception to mootness "prevent[s] a private defendant from manipulating the judicial process by voluntarily ceasing the complained of activity" in order to moot out the litigation and "secur[e] freedom to 'return to his old ways.'" *Alaska*, 17 F.4th at 1227 (first alteration in original) (quoting *Clarke*, 915 F.2d at 705).  But that exception has no application where, as here, the revocation or expiration of a government

13

order was for reasons other than the avoidance of litigation. *Id.* at 1229-30; *Clarke*, 915 F.2d at 705 (expressing "serious doubts" about whether the "voluntary cessation" rationale applies to such agency decisions because "it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose").

When TSA rescinded the latest planned extension, it did so not because of any desire to avoid litigation but because the related CDC order—which the expired directives were designed in substantial part to implement and enforce—had been vacated on a nationwide basis by the United States District Court for the Middle District of Florida. Press Release, TSA, *Statement Regarding Face Mask Use on Public Transportation* (Apr. 18, 2022), https://go.usa.gov/xuSpN. In such circumstances, the voluntary cessation doctrine does not apply. *Alaska*, 17 F.4th at 1229-30; *American Bar Ass'n v. Federal Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011). Relatedly, as discussed above, as to the portions of this case that are moot, there is no "reasonable expectation that the alleged violation will recur." *National Black Police Ass'n*, 108

14

F.3d at 349 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

*Second*, the issues in this case are not capable of repetition yet evading review. That exception to mootness applies only where the "challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (quoting *Clarke*, 915 F.2d at 704).

Here, the expired directives were in place for nearly 15 months. During that time, another petitioner was able to fully litigate his petition for review of these orders and obtain a published decision on the merits in this Court. *See Corbett*, 19 F.4th at 480-81. That petitioners were not able to fully litigate their challenge prior to the expiration of the challenged directives in April 2022 is largely due to their own litigation choices. Rather than challenging the directives promptly after they issued, petitioners waited until October 2021—after *Corbett* had already been fully briefed and scheduled for oral argument—to file their petitions for review, and then resisted the government's reliance on a statutory venue provision, thus delaying the

15

consolidation of their actions in this Court for orderly briefing. *See* Resp. Br. 19-23 (briefly discussing the procedural history of these cases). Had petitioners filed their petitions earlier and litigated in the normal course, they would have received a decision before the directives expired, as Corbett's experience indicates.

## CONCLUSION

For the foregoing reasons, this Court should find that petitioners' arguments that TSA lacks authority to issue security directives designed to mitigate the threat that COVID-19 or other deadly communicable diseases poses to transportation security, or that such directives cannot be issued without notice and comment, are not moot. Those challenges should be rejected on the merits based on this Court's decision in *Corbett*.  Petitioners' remaining challenges should be dismissed as moot.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant
   Attorney General*

DANIEL TENNY

*/s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
   *Attorneys, Appellate Staff
   Civil Division, Room 7710
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 353-9039
   Jennifer.l.utrecht@usdoj.gov*

September 2022

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,053 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.


*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

A1

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht